This morning is 22-8074 United States v. Hernandez-Quintero and for the appellant, Ms. Yaffe. Good morning and may it please the court. My name is Leah Yaffe and I represent Mr. Miguel Hernandez-Quintero. So this is a case about a traffic stop that involved a drug dog sniff and during that stop while one of the two officers, Trooper Deckert, was readying the dog, the other officer, Trooper Tapiavera, was directing Mr. Hernandez-Quintero to exit his vehicle. And in the district court proceedings, the defense argued that this was a Rodriguez violation because both officers took actions at the same time to facilitate a general criminal investigation instead of the traffic mission and they didn't have reasonable suspicion to do so. On appeal, Mr. Hernandez-Quintero's primary claim is that the district court committed legal error because it determined that an exit order like the one Trooper Tapiavera gave my client is categorically permissible during a traffic stop even if it's in fact taken to facilitate a suspicionless criminal investigation. We know that exit orders are given to facilitate dog sniffs all the time. What evidence do we have of facilitation? I think that is a key point here because ordinarily we're here on an objective standard, right, and you know just point me in the record where we can agree with you that this was, you know, a pretext to run the dog around the car. Sure, and just as a threshold caveat, of course we're asking this court to remand so the district court can make that finding in the first instance. We don't know his purpose on appeal but there's certainly significant evidence in the record that would suggest that this was done to facilitate the dog sniff. So, for example, we have both troopers testifying that they believe this stop and stops in general are criminal interdiction work. We know that Trooper Deckert was riding with Trooper Tapiavera that day in order to train him on criminal interdiction work. We know that Trooper Deckert normally stays in the car when he was training an officer but this time he, you know, had a hunch from the get-go that there was something else going on here and comes up with Trooper Tapiavera, signaling that there's concern here, and starts investigating the car as looking through the windows. We have Trooper Tapiavera being asked directly by both Defense Counsel and the district court, you know, does he always give exit orders? No, it's not his standard part of a traffic process. Why is he doing it? Trooper Tapiavera's testimony is really equivocal on this point. He doesn't answer the question, but part of what he says is this was not my first interdiction stop. And so that is significant evidence that he's doing this to facilitate the DoS sniff. I don't know for sure because we don't have the finding. But doesn't Wren say we shouldn't worry about subjective motivations in these traffic stop or in any kind of a police encounter? So, this is an important point because I think there's a different, a key difference between Wren and We're not going to inquire into an officer's subjective motivation for bothering to do a traffic stop. If there was an objective basis for doing that traffic stop, he sees a traffic violation. But if your legitimate basis for pulling somebody over is limited to a traffic violation, then you have to stay on task and you cannot take an action for the purpose of facilitating drug interdiction or general criminal interdiction work until you develop, if So those fit well together. We're saying, we're not inquiring why did you bother with this traffic stop, but we are asking why you took an action. Where did the officer that took him into the car get off task? So he, Trooper Tapiavera gets off task when he directs Mr. Hernandez, so that the direction to exit the vehicle and then he pauses and he waits for Mr. Hernandez-Contero to exit his vehicle and walk to the front of the patrol car. Why did he go back to the patrol car? So that's the question we need the district court to answer. Is there no evidence that he was checking on his computer to get the traffic record of the guy or anything like that? I think I misunderstood your question. Trooper Tapiavera probably had many reasons to go back to the patrol car. The question we're asking is why did he direct Mr. Hernandez-Contero to go with him to the patrol car? So Trooper Tapiavera was working on citation related tasks in the patrol car. We haven't disputed that on appeal. The point is that period of time where he's directing Mr. Hernandez-Contero to exit the vehicle, waiting for him to do so and then meeting up at the front of the patrol vehicle. If that was done to facilitate this immediately thereafter dog sniff that Trooper Deckert ran, that was a Rodriguez violation. Whether he took him with him into the car, into the police car or not, doesn't seem to me to extend or not extend the time factor. And most of our analysis on these cases is pretty linear. You just look at time factor. Was it time extended or not? It may be that it was unnecessary. There might be been an additional motive to take him back to the car, the police car. But until I see that he got off task of checking his reasons, I don't see any impact on time. I think I understand your point. I hope this answers it. When he directs Mr. Hernandez-Contero to exit the vehicle, he pauses for a minute, waits for him to get out of the front door. Then he speaks or he listens to Trooper Deckert say that he's going to run a drug dog sniff. So that's not, you know, he's not just saying, hey come out of the vehicle and then leaving. There's a measurable amount of time when he gives the exit order himself speaking it. That's several seconds. Then he waits for Mr. Hernandez- Contero to get out of the vehicle. He pauses. He listens to Trooper Deckert. And then he walks back to the patrol vehicle. So that is a measurable amount of time. And of course, we know that even a de minimis extension is unconstitutional. So it is that extra seconds to explain to the defendant that he was expected to That's part of it. And I think he does pause. I think, you know, some of this is the district court doesn't make super clear findings about what happened because it doesn't think that an exit order can be a detour. And so our analysis in this case is a little bit truncated by the fact that the district court's operating under the assumption that no matter what happened, the exit order was categorically permissible. We have the transcript, I mean, with the time stamps on it. So, you know, we have really good evidence of the timeline here. My question is, I mean, I think Tapia Veras testified that there's some percentage of traffic stops, routine traffic stops, where he asked the driver to come back to the patrol car. And if that's true, why isn't, in this case, the request to come back to the patrol car, no matter what the motivation, why isn't that fall within the scope of an objectively routine traffic stop part of the mission of this officer's protocol for a traffic stop? Because he doesn't say he does it every time. It's not standard for traffic stops. Right, but he does it some measurable percentage, right? Sure. And what we know from Rodriguez, though, is that the purpose for taking an action matters. Rodriguez says specifically it's okay to take a safety precaution related to the traffic stop. It's not okay to take a safety precaution for on-scene criminal investigation. What a safety precaution is, is going to be the same type of action in both of those scenarios. You know, the motivating difference in Rodriguez is the purpose. And it makes, you know, Rodriguez tells us this, this court sort of recognized this already in Cortez, but just for what it's worth, I think this makes a lot of sense in this context, because what you're asking when you're talking about a Rodriguez violation is, was there a point in time, a measurable point in time, where somebody was detained for the purpose of a suspicionless criminal investigation? We never allow that in the Fourth Amendment context. But Tapia said that he decided to bring the defendant back to his patrol car before he had a discussion with Deckard about running the dog around the car. So, you know, if he'd already made a decision to, you know, put Hernandez back in the patrol car, I don't see how that extends the traffic stop. You know, you might say, well, they'd concocted this plan, you know, before they got out of the patrol car to interact with the driver. But if he independently made the decision to put Hernandez in the car, why, why isn't that, you know, answer your question? Because it doesn't answer why he made that decision. He knows there's a drug dog in the car with them. He knows Trooper Deckard's investigating in the car at that time. He knows that, you know, they, he immediately gets out of the car. He knows that there was some concern about his alleged delay in pulling over. So, it is maybe evidence that the government could use to argue that the purpose here was a traffic purpose, but it doesn't answer the question. And it's ultimately a question that the district court needs to assess in the first instance. We don't have a district court finding on even the credibility of the Trooper's testimony. It's just not an appropriate inquiry for this court to take on when there is significant evidence in the record that this may very reasonably have been for the purpose of facilitating the dogsmith. And so, what we're asking for on appeal here is really limited. We're just saying the district court missed a very critical fact-finding that we need to know if there's a Rodriguez violation and we just need a remand because the district court's the right court to assess the credibility of the Trooper's in the suppression hearing. And, you know, I don't know what the district court is going to find on remand, but it is a critical part of the inquiry and we just don't have it on appeal. I'd like to just briefly move to the second issue in this case, which is just the sort of summary alternative holding that the district court made about reasonable suspicion. So, the district court, pretty much, said that Trooper Decker did in fact see green flecks of what he thought was plant material. That was a dispute below whether he had even truthfully seen the green flecks and the district court says he did see them. That's not reasonable suspicion, though. We are talking about crumbs on the backseat floor of someone's vehicle on a highway in a messy vehicle where there's food wrappers. And if that is the type of thing that allows somebody's car to be searched, then we're basically saying that a very large category of innocent travelers on the highway are going to be able to have their car searched. So, we've seen that photograph. Is there any challenge to that photograph in the record to us as an accurate representation of what the backs, what the floor looked like? I don't think so. This was the photos that, you know, both parties sort of referred to in the hearing. I think there is perhaps some testimony that, you know, where exactly things were might have been moved around after the search. I can't remember right this moment whether that photo was taken before or after the search, but the district court credits in its written order that the vehicle was messy, that there were food wrappers, that this is, you know, effectively sort of what the, what the car looked like. There was a pry bar and wire cutters also. That's true and that's just not something that's permissible for this court to consider on reasonable suspicion or a district court. This court has said repeatedly recently in Batara Molina that something that's a common item like a butane lighter or energy pills or even a vape pen adds nothing to the reasonable suspicion analysis. Common tools fall right into that category. It's true that you can come up with a plausible drug-related reason for these tools. Same with a butane lighter. It's frequently used to smoke methamphetamine. It doesn't matter. It can't weigh in the reasonable suspicion analysis. So, what we're left with is effectively, you know, someone decides to pull over still on the highway instead of taking an exit. A lot of innocent reasons for doing that. Maybe it's a marginal amount of weight towards reasonable suspicion. And then crumbs, which I would argue are so consistent with innocent activity that they also can't be considered by this court, but certainly the inference that those were drugs was unreasonable. I think I would like to reserve the rest of my time for rebuttal. You may, yes. May it please the court, counsel. Good morning. My name is Margaret Veer Buchan and I represent the United States. The United States is asking this court to affirm the district court's decision. The district court properly applied the case of Rodriguez and his progeny when it found that Trooper Tapia Vera did not unreasonably prolong the traffic stop in violation of the Fourth Amendment. Alternatively, the district court also was correct in finding that there was reasonable suspicion to briefly detain the defendant to conduct a dog sniff based on Trooper Deckard's suspicions and observations that he had seen on the center console in plain view, on the floorboard of the car, behind the center console, plant-like material resembling marijuana. And this court should affirm the district court. And I think it's important, the facts in this case, as alluded to by the court, are very unusual in such traffic stop cases where we have a trooper patrol officer and then a second vehicle with the canine. But in this case, Trooper Tapia Vera is traveling with the canine handler and the canine. And so there is really no delay that the defendant can point to. I think that's obvious by the argument on appeal, which is more of a technical argument, a legal interpretation of Rodriguez that I believe a plain reading of Rodriguez does not support. And I think it's also important when looking at the so-called or the alleged Rodriguez moment, we need to remember the facts of Rodriguez. The facts of Rodriguez are nothing like the facts in this case. The facts in Rodriguez are that after a lawful traffic stop was conducted by a trooper, I believe it was in Nebraska, the driver of the vehicle was asked out of the car and detained for seven to eight minutes with no reasonable articulable suspicion, no consent. And so I would suggest to this court that Rodriguez did not break new ground. It might have broken new ground for the Eighth Circuit that found that a traffic stop that was extended when there was no further cause or reason or the seven to eight minutes seemed to be that the Rodriguez court assumed the seven to eight minutes was de minimis by the language, but they found that that seven to eight minutes of de minimis delay was unconstitutional. And it is a bit of a challenge because the court in Rodriguez did not define de minimis for us. It appears to have just relied on the Eighth Circuit's language that a seven to eight minute delay was in fact de minimis. And the court said no, that seven to eight minute de minimis delay was unconstitutional. So when the court, the defendant here hangs his hat on two sentences in Rodriguez, and if you'll permit me to just quote from Rodriguez, on scene investigation into other crimes however detours from that mission. So too do safety precautions taken in order to facilitate such detours. The court, and I'm citing it at page 1616 of the Rodriguez opinion, the court then went on to say, quote, thus even assuming that the imposition here was no more intrusive than the exit order in Mims, the dog sniff could not be justified on the same basis. Rodriguez is reaffirming Mims, not is that it's a qualification. But it's really the suggestion is that remand is warranted under Rodriguez for the court now to make a decision that as to the officer's purpose in asking a lawfully stopped occupant of the vehicle out of the car, we now have to ask the officer's purpose in doing so. I didn't think that the remand was sought for the officer's purpose. I thought the remand was sought to determine whether that that resulted in any any delay that wasn't directly related to the traffic investigation. Respectfully, sir, I thought the argument was that the remand is necessary to find out why. Why did the trooper? Well, that was raised for asking the person out of the car. That's the question is whether you can ask him out of the car with no reason at all or do you need a reason? Sir, you do not need a reason. That is now that that was an issue that was being raised here. And the question was, can you or can't you? So to that extent, I agree that subjectiveness is at least presented to us in this case. But that's a different question than whether there was a delay or not. And in fact, I don't understand a council to be arguing the delay. I understand her to be arguing that this court must determine the officer's purpose in asking him out of the vehicle. And only then, after we determine whether or not the court finds out what his purpose was, was it to facilitate the stop or was it for safety reasons? Only then can we determine if there was an unconstitutional delay. So you think that if once we decide that the purpose of asking him out of the car is not relevant because you can always do it, that's the end of this appeal? Absolutely. It is on that issue. You could also affirm on the second issue as well. But I think Rodriguez, you know, the Supreme Court is not going to overrule established law, which is MIMS, which is what they're suggesting, which what defense counsel or defendant is suggesting is is Rodriguez has now effectively overruled MIMS because as this court knows, MIMS was extended, the inherent dangerousness of traffic stops, right? That the officers can order you out of the car for any reason because traffic stops are so dangerous. And then the court in Maryland v. Wilson then extended that to the passengers. And specifically in footnote six of that opinion, the court notes this is a bright-line rule. This is a bright-line rule. And if Rodriguez intended to quote, qualify a bright-line rule and now require a court to ask why, the court must explicitly state it's overruling MIMS then. The Supreme Court does not overrule by innuendo and inferences. And I suggest what is being asked here is to go back to a standard that the court has told us not to do. The request here is to send it back to district court to ask the court to look into the subjective intentions of the officer. And that is contrary to MIMS and it's contrary to Wren. And the other thing here, too, I think we need to be really careful about the words we're using, safety precautions. The Supreme Court in Rodriguez was referring to the safety precautions that were taken in Rodriguez. Those safety precautions were not the MIMS precautions, right? If we have to remember the Eighth Circuit in Rodriguez argued, well this case is very similar to MIMS. I mean there was an important public policy interest, the dangerousness inherent in traffic stops in Rodriguez, which supported the bright-line rule in MIMS. Then the safety precaution at issue in Rodriguez was not the same. The safety precaution at issue wasn't pursuant to a lawful traffic stop because everybody agreed the traffic stop had ended. The Eighth Circuit took the reasoning of MIMS to apply it to justify a delay for officer safety based on the officer's concern of conducting a dog sniff without backup. So, and I hope that's clear, Rodriguez was not about MIMS. The Eighth Circuit used the reasoning of MIMS and then the public policy that the government clearly has in stemming the influx of drugs. And they said, well in MIMS, since that was such an important public policy and it was okay there, here we'll say it's de minimis because there's also an important public policy of stemming the influx of drugs in the United States. And so the safety precautions were different. And Rodriguez simply stands for the proposition of reaffirming MIMS and that is safety precautions taken pursuant to a lawful traffic stop are fine. Safety precautions, asking for a backup officer before you run a dog sniff, safety precautions taking for the point of running a dog sniff when you don't have any reason to detain a person is unconstitutional. Rodriguez was affirming not qualifying MIMS. Is there any constitutional problem with the Wyoming Highway Patrol, you know, running a dog, a drug dog around a car during a, you know, garden variety traffic stop? You know, the second officer, just, officer one goes up to the driver, officer two runs the dog around. Is there any constitutional problem? Absolutely not, your honor. I don't believe there is. I think the law is clear. As long as the running of the dog sniff, because it's not a search, I mean, I think that's the real issue that was addressed in Illinois v. Caballeras in 2005, right? The issue was there whether it was a search because there was no reasonable articial suspicion and that's kind of, that's where we have all this drug law now and we have the contemporaneous requirement. So, so no, there is, as long as that drug sniff does not, does not prolong the stop. And Caballeras said that in 2005 when they found the first drug sniff was not, was not a search and then they found, and it didn't unreasonably prolong the stop because it was contemporaneous. And in Caballeras, as Judge Ginsburg noted in the Rodriguez opinion, they specifically held, but were, but if it did delay the stop, it would be unconstitutional. Again, why I say Rodriguez did not break new ground here. And so, you know, what we have here is, is, you know, I think the court can simply affirm the court on that and the court doesn't need to reach the reasonable articial suspicion, but I do believe there's also reasonable suspicion in this case. But let me also suggest to the court another way to resolve the alleged Rodriguez moment. Everything Trooper Tapia did was part and parcel of the traffic stop and the district court found that, that he did not delay. And let's just assume, for the sake of argument, although it is a bit unreasonable, that the request to exit, as defense argued below and continues to and as I think Judge Avella, you were pointing out earlier, where is the delay? So let's assume that the exit order, even though I think Mims doesn't allow a court to even look into the subjective intent of the officer, he was allowed dealer's choice to ask that man out of the car. He didn't have to, but he could. Categorically, it was his decision to make and he didn't have to justify it. But let's say, for the sake of argument, that the Supreme Court, through duendo, found that Mims was qualified and the exit order assumed was for the purpose of running the dog. Where's the delay? I mean the second part of the test is to ask whether or not it was for an improper purpose and did it then prolong the stop, right? So if they took it out to facilitate the dog, where's the delay? The trooper was asked him to get out of the car. I mean the trooper still had to walk back to his car to run the citations and I think that's to your point, Judge Avella. Where's the delay? I mean this court has had numerous cases. In fact, the United States versus Nathan Cates was decided recently by this court. Trooper there, Wyoming Highway Patrol, invited the defendant back to his car. Court found that was reasonable. I mean there is nothing here where trooper typed a delay. He asked him out of the car. He asked him to pat down. He asked him questions about where he was going. He asked him about his record. You hear him in the car typing. There's simply no delay. And if you think about, too, when you're looking at in the context of Rodriguez, remember the case there where I think it was Officer Struble. When he did the traffic stop, initially he asked the defendant out of the car and the defendant said, do I have to? And the trooper said, well no. But what ended up happening is then the officer had to go back to his car, run the record check. He then had to walk up back to the car to ask for more questions. Then he had to go back again and type up some more things in his MDT or mobile data terminal before issuing the citation. And that took him 19 minutes. I suggest that but for the dog stop, the way trooper Tapia Vera handled this traffic stop, it would have been one of the quickest traffic stops out there. And so I think it facilitated the stop by asking him to get into the car, which I believe he had every right to do. But I think it facilitated the stop. And I don't think you can point to anything in the record where there was any delay, not for one second. If I could turn briefly to the reasonable articulous suspicion argument, Your Honors, I do think the court can also affirm on that ground as well. Counsel is right. There's no dispute on this issue. The reasonable articulous suspicion argument was triggered before the request to exit the vehicle, which is their Rodriguez moment. So if the court confirms and agrees, as I do, that the district court probably found that there was reasonable articulous suspicion, the whole Rodriguez moment could be avoided should the court choose to do to do that. Clearly the district court found that Trooper Deckert was credible. He referred to, she did refer to his observations. It's clear he said he believed it was marijuana. Quite frankly, I think because he had the dog, he just wanted to be sure because he had the dog and he was being conservative. But I think that observation alone was enough. But you have to take the court's finding in the context of the testimony. Trooper Deckert was a canine handler for 11 years. He regularly trains with controlled substances, including marijuana. And so his opinion that, in fact, that what he saw was raw marijuana is entitled to wait. I mean, reasonable suspicion is not a heavy burden. It's not an onerous burden. It's just more than a hunch, but less than probable cause. And I think you can confirm on that basis as well. All right. Thank you, counsel. Ms. Schaffee, you had some rebuttal. So I'd like to first focus on purpose and then get to delay. I think the in oral argument that taking an exit order to facilitate a dog sniff is unconstitutional. That's what happened at the end of Rodriguez. And Rodriguez says it doesn't matter if it happens at the end of the stop or in the middle or at the beginning. It's unconstitutional if you're detaining somebody for a suspicionless criminal investigation and an exit order is part of that when you're running a dog sniff. So purpose absolutely matters here. That's core to this. Could you clarify, just in response to opposing counsel's argument, what finding exact finding you want from the district court on remand? Is it the purpose? Is it subjective? Yes, we need to know. Did Trooper Tapia Vera give the exit order to facilitate the dog sniff such that he would not have otherwise given the exit order, which is where the subjective purpose? Yes, that's a subjective purpose for taking the action. I don't think this is actually new in this court. Cortez recognizes this. It says the travel plan questions at the beginning of Cortez were okay. They were not pretextual. Pretextual is this court's word. Later in, like the exact same travel questions asked later in the stop, it didn't have a legitimate traffic safety purpose. They were not okay. So the purpose matters. This court has recognized it. I'm sorry, you keep saying purpose matters, but I guess I'm asking does subjective intent matter? Is that a subjective inquiry? It's a subjective inquiry. Why did the officer take the action in this traffic stop? Was it to further the traffic purpose or was it to further drug interdiction work? This purpose word is what Wren uses to distinguish itself from other inquiries where you consider purpose in the Fourth Amendment context, like inventory searches and administrative inspections. I think it's what we're asking is why did you take this action? Just quickly on delay, we don't have a finding on exactly how long the delay was because the district court made this legal error about purpose, but at least the amount of time it took to give the exit order, if that otherwise would not have been taken, but for an improper purpose, that's a measurable amount of time. So we know there is some delay. We don't have, whether it's five seconds or 20 seconds, it doesn't matter under the doctrine, but there's if the exit order was only given for drug reasons, then the amount of time that that took at least is a measurable amount of time that this detention was extended. The government pushes an overall reasonableness standard at the end of their argument saying 19 minutes is reasonable. I understand the draw of that argument, but it's squarely rejected by the majority. We are not talking about how long is a particular traffic stop. We're saying, was there a measurable amount of time when somebody was detained to facilitate a suspicionless criminal investigation? And that's the only reason they're being detained in that moment. And that's what matters here. All right, counsel. Thank you very much. Your time's expired. Both of you are excused. We appreciate the coming to Santa Fe today. Thank you for the people that attended the hearings this morning. The case is submitted and the court will